**Paul GAUMOND, Plaintiff,**

v.

**The CITY OF MELISSA, TEXAS and David Dorman, Individually and in His Official Capacity, Defendants.**

No. 4:01–CV–252.

United States District Court,
E.D. Texas,
Sherman Division.

Sept. 19, 2002.

Stephen L. Enda, ⋅Weiner, Glass & Reed, Dallas, TX, for Plaintiff.

James T. Jeffrey, Jr., Law Offices of Jim Jeffrey, Arlington, TX, for Defendant.

## *MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

DAVIS, District Judge.

The City of Melissa, Texas ("the City") and David Dorman ("Dorman") (collectively "Defendants") have filed a Motion for Summary Judgment. After carefully considering the submissions of the parties, the record, and the applicable law, the court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's federal claims for violation of his due process rights pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution and invasion of privacy in violation of 42 U.S.C. § 1983 and his First, Fourth, Fifth, and Fourteenth Amendment Constitutional rights. In addition, for the reasons described below, the court declines to exercise its supplemental jurisdiction and the state claims are hereby **DISMISSED WITHOUT PREJUDICE** to Plaintiff reasserting them in state court.

### *PROCEDURAL AND FACTUAL BACKGROUND*

On October 1, 1995, Plaintiff Paul Gaumond ("Gaumond") began serving as the marshal for the City of Melissa, Texas. On August 10, 1999, the City Council voted to hire Bob Williams ("Williams"), a sergeant with the City of Richardson, Texas, as a consultant to review the City's marshal department procedures and personnel and to submit a five-year plan for its future law enforcement needs. On August 12, 1999, Dorman, the mayor of the City of Melissa, Texas, issued a directive notifying Gaumond about the hiring of Williams and that he was to have access to all records, past and present case files, and personnel records as well as other materials. The city administrator provided Williams with written complaints against Gaumond and videotapes pertaining to the complaints. On August 21, 1999, Williams completed and submitted his Final Report on the City of Melissa Marshal Service ("Report"), which was received by the City on August 23, 1999.

In the Report, Williams recommended that Gaumond be terminated from his employment as city marshal. On August 23, 1999, Dorman issued a directive to the city administrator, instructing her to call Gaumond and inform him that he was being placed on administrative leave. On August 24, 1999, at a City Council meeting, the Council terminated Gaumond's employment as city marshal. Gaumond timely appealed his termination to the City Council, and on September 28, 1999, the Council went into executive session and voted to uphold Gaumond's termination.

Gaumond filed this action on August 10, 2001, asserting violations of his due process rights pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the Constitution, invasion of privacy in violation of 42 U.S.C. § 1983 and his First, Fourth, Fifth, and Fourteenth Amendment Constitutional rights, breach of contract, wrongful discharge, and conversion against the City and Dorman, individually and in his official capacity. On November 13, 2001, Defendants filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The court granted Defendants' Motion as to Dorman in his official capacity and denied the remainder of Defendants' Motion without prejudice to Defendants re-filing the motion as a Motion for Summary Judgment.[1]

---

1. *See* Judge Brown's Order, dated Feb. 19, 2002 (Docket No. 12).

On April 22, 2002, Defendants moved for summary judgment on all of Gaumond's claims, contending that no genuine issue of material fact exists regarding any of his claims. For this reason, the City and Dorman contend they are entitled to judgment as a matter of law. Gaumond, on the other hand, contends that summary judgment should be denied because genuine issues of material fact exist regarding all of his claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue for trial exists, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must assert competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996); *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994). The party opposing summary judgment is required to identify evidence in the record and articulate the manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## DUE PROCESS CLAIM

█ In his § 1983 claim, Gaumond alleges that the acts of the City and Dorman concerning his termination deprived him of a protected property interest guaranteed by the Fourteenth Amendment to the Constitution. To obtain relief pursuant to 42 U.S.C. § 1983, a plaintiff must prove two elements: (1) a deprivation of a right secured by the Constitution and laws of the United States, and (2) a deprivation of that right by the defendant acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Richards v. City of Weatherford,* 145 F.Supp.2d 786, 789 (N.D.Tex.2001) (citing *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) ("To state a cognizable claim under 42 U.S.C. § 1983, [plaintiff] must allege that he was deprived of a federally secured right by the City, acting under the color of state law.")).

█ It is well established that the Due Process Clause of the Fourteenth

Amendment protects against deprivations of life, liberty, or property without due process or due course of law. *Richards,* 145 F.Supp.2d at 789 (citing *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)). An individual is entitled to the protection of the Fourteenth Amendment only if he can show (1) a deprivation of, or intrusion upon, a property right or liberty interest, and (2) that the public employer's termination of that interest was arbitrary or capricious.[2] *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir.1993); *Richards,* 145 F.Supp.2d at 789 (citing *Wells v. Hico Indep. Sch. Dist.,* 736 F.2d 243, 251 (5th Cir.1984), *cert. dismissed,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985)); *see also Kelleher v. Flawn,* 761 F.2d 1079, 1086 (5th Cir.1985) ("in order to recover under the Fourteenth Amendment in a § 1983 action, a plaintiff must demonstrate that [he] was deprived of a liberty or property interest and that [he] was not afforded adequate procedural protection prior to or following the deprivation").

▆▆▆ A plaintiff asserting a due process claim in the public employment context must demonstrate that he has a clearly established property interest in his employment. *Schultea v. Wood,* 27 F.3d 1112, 1116 (5th Cir.1994), *reh'g en banc,* 47 F.3d 1427 (5th Cir.1995); *Moulton,* 991 F.2d at 229. "The Due Process Clause of the Fourteenth Amendment does not create a property interest in government employment." *Cabrol v. Town of Youngsville,* 106 F.3d 101, 105 (5th Cir.1997). A property interest may exist by operation of a contract, law, or policy established under state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Cabrol,* 106 F.3d at

105. The existence of a property interest must be determined by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Moulton,* 991 F.2d at 229. Here, the court must look to Texas law to determine whether a property right was created.

▆▆▆ Texas is an employment-at-will state. *Moulton,* 991 F.2d at 230 (citing *Zimmerman v. H.E. Butt Grocery Co.,* 932 F.2d 469, 471 (5th Cir.1991) and *East Line & Red River R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888)). Absent a specific contract to the contrary, employment contracts are terminable at will by either party. *Id.* To prevail, Gaumond must therefore show some sort of contract fitting this exception. A property interest in employment may be created by an expressed or implied contract. *Moulton,* 991 F.2d at 230.

▆▆▆ Because there was no written contract for employment between the City and Gaumond, there is only one potential source for such a contract: the Personnel Policies Manual ("Manual"). In support of his position, Gaumond cites Chapters 3, 7, and 8 of the Manual. Specifically, Gaumond points to Section 3–01, entitled Probationary Period, which states, "Every newly employed person ... shall be required to successfully complete a probationary period of three (3) months." Based on the fact that Gaumond successfully completed the probationary period, he contends that he has a constitutionally protected interest in continued employment. However, Section 3–01 creates no entitlement to continued employment. *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (A person claiming a property inter-

---

**2.** The court need not address the second prong inasmuch as Gaumond fails to satisfy the property interest requirement. Also, Gau-

mond does not contend that he has a liberty interest in his employment. Therefore, the court will not address this issue.

est in a benefit "must have more than an abstract need or desire for it .... He must ... have a legitimate claim to it."); *see also Gray v. Board of Regents of the University System of Georgia*, 150 F.3d 1347, 1350–52 (11th Cir.1998) (holding that assistant professor's mere presence as a member of the faculty beyond a seven-year probationary period did not demonstrate that she was protected by public university's tenure system). Further, the Manual says nothing about an employee getting new rights or new protections or a new status if the employee completes the probationary period. To the contrary, Chapter 1 of the Manual, pages 1–2, expressly states:

> Nothing in this Manual shall be considered to create a property right in employment. It should be understood that employment is for an indefinite period and is at will for both employer and employee. These policies are not intended to constitute an employment contract and the employer reserves the right to amend these policies unilaterally and without notice.

Further, the Manual provides that employees are held responsible for knowing the content of the policies contained therein.

■ Gaumond also contends that the Manual established that he could be removed from his position as Marshal only "for cause." However, Gaumond does not state where specifically in the Manual this "just cause" standard for termination is created. Gaumond simply states, "By virtue of Chapters 3, 7, and 8 of the City's Manual, Defendants have also created a just cause standard for termination." *Pl's Resp.* at 6. The court has reviewed Chapters 3, 7, and 8, and can find no language expressing a "just cause" standard. In the absence of "termination for cause" language, the Manual created no property interest. *Moulton*, 991 F.2d at 230–31; *Henderson v. Sotelo*, 761 F.2d 1093, 1096–

97 (5th Cir.1985). Thus, Gaumond had no entitlement to continued employment and no property interest in his status as marshal. Consequently, Gaumond has not and cannot state a claim under § 1983 and the Fourteenth Amendment for deprivation of a protected property interest.

### INVASION OF PRIVACY CLAIM

■ Gaumond also argues, without citation to any authority, that the Manual created a constitutionally protected privacy right. To support this contention, Gaumond relies on Section 9–01 of the Manual, which states:

> Unless otherwise provided by law, personnel files shall be confidential and may not be used or divulged for purposes *unconnected* with the city personnel management, except with the permission of the employees involved. (emphasis added).

Gaumond alleges that his personnel file was released to the City's personnel consultant without his permission thereby violating his privacy rights created under 42 U.S.C. § 1983 and the First, Fourth, Fifth and Fourteenth Amendment. The court disagrees.

On its face, Section 9–01 of the Manual unambiguously states that personnel records may be used, without the employee's consent, for purposes of personnel management. It is undisputed that the personnel consultant, Williams, was hired under the authority of the City Council for purposes which included a "review [of] personnel and their qualifications." Based on the City policy, the City was authorized to allow its consultant to review the materials. Thus, there is no genuine issue of material fact as to Gaumond's invasion of privacy claim.

### STATE LAW CLAIMS

■ Gaumond's only remaining claims are state law claims asserting breach of

contract, wrongful discharge, and conversion. Pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), a district court may exercise jurisdiction over claims that form part of the same case or controversy as the claims over which the court has original jurisdiction. However, a district court may decline to exercise jurisdiction over a claim if "the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3). Thus, district courts are given "wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White,* 996 F.2d 797, 799 (5th Cir.1993).

After considering the nature of Gaumond's remaining state law claims, the court determines that it would be inappropriate for it to retain jurisdiction over these claims. *Richards,* 145 F.Supp.2d at 793 (dismissing § 1983 claim of municipal judge against city and declining to exercise supplemental jurisdiction over remaining state law causes of action). As stated by the Supreme Court, a "[n]eedless decision of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable [state] law." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Thus, pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise jurisdiction over Gaumond's remaining state law claims. Accordingly, the court dismisses Gaumond's state law claims without prejudice to Gaumond reasserting them in state court.

3. The court notes that it does not intend the grant of summary judgment on Gaumond's federal claims for violations of his due process rights pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the Constitution and invasion of privacy in violation of 42

### *CONCLUSION*

For the reasons stated above, there are no genuine issues of material fact regarding Gaumond's federal claims for violations of his due process rights pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the Constitution and invasion of privacy in violation of 42 U.S.C. § 1983 and his First, Fourth, Fifth, and Fourteenth Amendment Constitutional rights. Accordingly, the court **GRANTS** Defendants' Motion for Summary Judgment as to those claims. In addition, for the reasons stated above, the court declines to exercise its supplemental jurisdiction and the state claims are hereby **DISMISSED WITHOUT PREJUDICE** to Gaumond reasserting them in state court.[3]

**IT IS SO ORDERED.**

U.S.C. § 1983 and his First, Fourth, Fifth, and Fourteenth Amendment Constitutional rights to qualify as entry of a partial summary judgment under Fed.R.Civ.P. 54(b), but rather as a Final Summary Judgment.